[Cite as *Huntington Natl. Bank v. Calvert*, 2012-Ohio-2883.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

THE HUNTTINGTON NATIONAL
BANK, FKA SKY BANK

      Appellee

      v.

KEITH D. CALVERT, et al.

      Appellants

C.A. No.     25684

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2008-08-5674

DECISION AND JOURNAL ENTRY

Dated: June 27, 2012

CARR, Judge.

{¶1}    Appellants, Steven and Melissa Cox, appeal from a judgment of the Summit County Court of Common Pleas that granted summary judgment to Wells Fargo Bank on the Coxes' claims against it for breach of contract, promissory estoppel, negligent and fraudulent misrepresentation, and declaratory judgment.   This Court does not address the propriety of the judgment insofar as it granted summary judgment on the breach of contract and declaratory judgment claims, as those issues are now moot.  The remainder of the trial court's judgment is reversed and remanded because the bank failed to meet its initial evidentiary burden to support summary judgment on those claims.

I.

{¶2}    On August 12, 2008, Huntington National Bank, fka Sky Bank, filed this foreclosure action against Keith and Catherine Calvert and others, alleging that the Calverts had defaulted on a $435,000 mortgage on their residential property on Chadwick Drive in

Uniontown, Ohio. The trial court eventually entered a decree of foreclosure and, on January 8, 2010, filed a notice that a sheriff's sale of the property was set for April 23, 2010. Sometime prior to the foreclosure sale, the mortgage was assigned to Wells Fargo Bank as trustee of RMAC REMIC Trust. Wells Fargo was substituted as the plaintiff in this case, although the actual substitution did not occur until after the foreclosure sale.

{¶3} Prior to the sheriff's sale, the Coxes entered into negotiations with the Calverts and Marc Schmitz, an asset manager of Quantum Servicing Corporation, the entity that was servicing the loan on behalf of Wells Fargo. With the approval of the Calverts, the Coxes negotiated directly with Schmitz about a short sale of the Chadwick Drive property. The parties do not dispute that Schmitz, on behalf of Quantum, agreed to cancel the sheriff's sale and release Wells Fargo's mortgage on the property and the Coxes agreed to pay $340,000 and to satisfy certain other conditions. The parties dispute whether the Coxes satisfied the conditions required to create a binding agreement and further dispute the legal effect of subsequent discussions between the Coxes and Schmitz on the days before and after the sheriff's sale.

{¶4} On April 23, 2010, the sheriff's sale of the Chadwick Drive property proceeded and Claudia Niles, as the successful bidder, paid $380,000 for the property. Shortly after the sheriff's sale, the Coxes filed a motion with the trial court, requesting that it deny the bank's motion to confirm the sheriff's sale to Ms. Niles. The Calverts also moved to stay the confirmation of sale, which the trial court eventually granted. The trial court granted leave to both the Coxes and Ms. Niles to intervene in the action, as they claimed to hold competing interests in the foreclosed property.

{¶5} The trial court also permitted the Coxes to file a new party complaint, which alleged claims for breach of contract, promissory estoppel, negligent and fraudulent

misrepresentation, and declaratory judgment against the bank. Although there was an issue at that time about whether the appropriate banking entity was a party to this case, as Wells Fargo was not named as the plaintiff in the foreclosure action, it was later substituted as a party. There no longer is any dispute that Wells Fargo is the proper plaintiff in the foreclosure action and the defendant to the claims filed by the Coxes.

{¶6} The Coxes' new party complaint set forth several causes of action against the bank. In addition to the allegations that they had a binding short sale agreement to purchase the property, the Coxes alleged that immediately before and after the sheriff's sale, Schmitz continued to make binding promises and/or negligent or fraudulent misrepresentations to them, upon which they reasonably relied to their detriment, and that they had the right to purchase the property for $340,000.

{¶7} The bank moved to dismiss the Coxes' complaint and/or for summary judgment. Ms. Niles and the Coxes also moved for summary judgment on the Coxes' complaint. After considering the three motions, the trial court granted summary judgment to the bank and Ms. Niles on all counts in the Coxes' complaint and, consequently, denied the Coxes' motion for summary judgment. The Coxes have appealed from that order. The trial court denied the Coxes' request for a stay and they did not move this Court to stay the trial court's judgment. Consequently, no stay was granted and the property has since transferred to Ms. Niles.

{¶8} Prior to the parties' briefing on the merits, Ms. Niles moved to dismiss this appeal, arguing that the Coxes' claims had become moot because the sheriff's sale had been confirmed and the proceeds had been distributed. The Coxes responded in opposition, asserting that none of their claims had become moot, particularly their claims for damages that remained unaffected by the transfer of the property. This Court tentatively denied the motion to dismiss,

allowing the appeal to proceed on the merits, but explicitly stated that the issue may be revisited during the final disposition of the appeal.

{¶9} The Coxes' brief on the merits raises three assignments of error. Prior to addressing the merits of their assigned errors, however, this Court will revisit the matter of whether this appeal involves a live controversy or whether the issues have become moot because the Chadwick Drive property has been transferred to Ms. Niles.

## Mootness of the Issues on Appeal

{¶10} With the full record and merits of the appeal before us, this Court is better able to determine whether the Coxes' claims have become moot. The record reveals that, in addition to their claim that they were entitled to purchase the Chadwick Drive property, which was the subject of the foreclosure action, the Coxes brought additional claims against the bank that were separate from their purported interest in the foreclosed property and remained unaffected by the transfer of the property to Ms. Niles.

## Intervention by the Coxes

{¶11} Upon the Coxes' motion, the trial court permitted them to intervene in this foreclosure action and to file a new party complaint against the bank. They sought to intervene after judgment had been entered against the Calverts and the property had been sold at the sheriff's sale. The Coxes specifically sought, and were granted, leave to intervene in the action "for the purpose of asserting claims to protect their interest in the property which is the subject of this action[.]" They represented to the court that, if not permitted to intervene, they would have "no adequate remedy at law relating to this specific, real Property."

{¶12} The Coxes' stated reason for intervening in this action, rather than filing a separate lawsuit against Wells Fargo, was to stop the transfer of the Chadwick Drive property to

Ms. Niles. The trial court allowed them to intervene and delayed its confirmation of the sheriff's sale to determine whether the Coxes' claims to the property warranted a cancellation of the sale to Ms. Niles.

{¶13} When the trial court allowed the Coxes to intervene as parties, however, it accepted their new party complaint, which stated causes of action against the bank for breach of contract, declaratory judgment, promissory estoppel, negligent misrepresentation, and fraudulent misrepresentation. Although some of these claims were directly tied to the Coxes' purported interest in the Chadwick Drive property, others were not. Because some, but not all, of the Coxes' claims became moot after the Chadwick Drive property transferred to Ms. Niles, this Court will address this issue as it pertains to the Coxes' claims against the bank, distinguishing their claims that sought specific performance of the alleged short sale agreement from their remaining claims, which sought monetary damages.

### Claims for Specific Performance

{¶14} The Coxes' claims for breach of contract and declaratory judgment did not pray for any type of monetary relief, but requested only specific performance of their alleged agreement to purchase the Chadwick Drive property. By their own arguments in support of their motion to intervene, unless they were permitted to intervene in this action and prevent the transfer of the property to Ms. Niles, they would have no adequate relief on these claims. For that reason, the trial granted them leave to intervene. After the trial court determined that the Coxes had no legal claim to the Chadwick Drive property, however, it confirmed the sale to Ms. Niles and later denied the Coxes' request to stay the judgment. The Coxes did not ask this Court to stay the trial court's judgment, so title to the Chadwick Drive property has transferred to Ms. Niles. The judgment pertaining to the subject of the foreclosure action has been satisfied and

Ms. Niles now holds title to the Chadwick Drive property free and clear of any claim that was a part of the foreclosure action. *See* R.C. 2329.45. Consequently, any legal claim that the Coxes may have had to purchase that specific property has been extinguished. *Bankers Trust Co. of California, N.A. v. Tutin*, 9th Dist. No. 24329, 2009-Ohio-1333, ¶ 8.

{¶15} Despite the Coxes' suggestions to the contrary, there is nothing in the record to suggest that Ms. Niles is anything other than an innocent third party to the foreclosure action and the transactions between the Coxes and the bank. The Coxes alleged no claims of wrong-doing against Ms. Niles, who did not become a "party" to this action until after she purchased the property at the sheriff's sale and the Coxes sought leave to intervene in the action. Ms. Niles intervened in this action for the sole purpose of protecting her interest in the property from the Coxes' claims. Consequently, the Coxes have made no valid argument, even if we were to accept authority from other appellate districts, that Ms. Niles is not entitled to the protection of R.C. 2329.45 as a third-party purchaser of the foreclosed property at the sheriff's sale.

{¶16} Because this Court cannot give any practical effect to the Coxes' prayer for specific performance of their alleged short sale agreement to purchase the Chadwick Drive property, any error in the trial court granting summary judgment to the bank on their claims for breach of contract and declaratory judgment are now moot.

**Claims for Damages**

{¶17} The transfer of the Chadwick Drive property to Ms. Niles and the fact that the proceeds of the sheriff's sale have been distributed is of no consequence to the Coxes' remaining claims, however. The Coxes' new party complaint included additional claims against the bank for promissory estoppel, negligent misrepresentation, and fraudulent misrepresentation. These claims were unrelated to the Calvert's default on the mortgage or a legal interest in the Chadwick

Drive property, but were strictly new party claims against the bank, based on facts and transactions that were unrelated to the complaint in foreclosure. Specifically, the Coxes sought the damages that they allegedly incurred due to their reliance on the promises and/or misrepresentations of Marc Schmitz on behalf of Quantum and the bank that they had a legal right to purchase the Chadwick Drive property, even after the sheriff's sale went forward. These claims did not seek the actual property or a share of the proceeds of the sheriff's sale, as they were unrelated to any of the allegations in the original foreclosure complaint. Because transfer of the Chadwick Drive property and satisfaction of the foreclosure judgment had no bearing on the Coxes' new party claims for damages against the bank, they remain live controversies. The Coxes' legal right to damages against the bank, if any, has not been extinguished through a satisfaction of the foreclosure judgment. Consequently, their assigned errors pertaining to these claims will be addressed on the merits.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON APPELLANTS' CLAIM FOR BREACH OF CONTRACT, SPECIFIC PERFORMANCE AND DECLARATORY RELIEF.

{¶18} The Coxes' first assignment of error pertains solely to their claims for breach of contract and declaratory judgment, which sought specific performance of the alleged short sale agreement to purchase the Chadwick Drive property. Because any claim that they had to that specific property is now moot, this Court will not reach the merits of their first assignment of error.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON APPELLANTS' CLAIM FOR PROMISSORY ESTOPPEL.

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE COXES' CLAIMS FOR NEGLIGENT MISREPRESENTATION AND FRAUDULENT MISREPRESENTATION.

{¶19} The Coxes' second and third assignments of error are that the trial court erred in granting summary judgment to the bank on their claims for promissory estoppel, negligent misrepresentation, and fraudulent misrepresentation. Each of these claims was based on the Coxes' allegations that Marc Schmitz, acting on behalf of Quantum and the bank, made promises and/or misrepresentations to them, upon which they reasonably relied to their detriment, that they would have a legal right to purchase the Calvert Drive property, even after the sheriff's sale.

{¶20} The bank filed a joint motion to dismiss the Coxes' complaint or for summary judgment. On the Coxes' claims for promissory estoppel, negligent and fraudulent misrepresentation, without pointing to any evidence in the record, the bank argued that the Coxes had "Fail[ed] to State a Claim[,]" suggesting that the bank was arguing for dismissal of these claims based on Civ.R. 12(B)(6), not for summary judgment under Civ.R. 56. A trial court cannot grant summary judgment on grounds not raised, nor can it convert a motion to dismiss into a motion for summary judgment without providing notice to the parties of its intention to do so and an opportunity for them to respond. *See Eller v. Continental Invest. Partnership*, 151 Ohio App.3d 729, 2003-Ohio-894, ¶ 15-16; *Petrey v. Simon*, 4 Ohio St.3d 154, 155 (1983).

{¶21} Moreover, even if the bank's motion could be construed as seeking summary judgment on all claims, the bank failed to meet its initial burden on summary judgment to point to "some evidence" in the record. It is well settled that a party moving for summary judgment bears an initial burden of pointing to "some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving

party's claims." *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." *Id.*

{¶22} In its motion, the bank simply argued that the Coxes had not incurred any damages or otherwise changed their position in reliance on any alleged promises or misrepresentations by Schmitz about their right to purchase the Calvert Drive property. The bank pointed to no evidence to support that argument, however. As the Coxes correctly argue on appeal, they had no reciprocal burden to point to evidence of their detrimental reliance because the bank failed to satisfy its initial burden on summary judgment. *Id.* Consequently, the trial court erred in granting summary judgment to the bank.

{¶23} Because the bank failed to meet its initial burden on summary judgment on the Coxes' claims for promissory estoppel, negligent misrepresentation, and fraudulent misrepresentation, the trial court erred in granting summary judgment on those claims. The Coxes' second and third assignments of error are sustained.

### III.

{¶24} The first assignment of error was not addressed because the issues are moot. The second and third assignments of error are sustained because there was no evidence presented to support summary judgment on the claims for promissory estoppel, negligent misrepresentation, and fraudulent misrepresentation. The judgment of the trial court is reversed on those claims only and the matter is remanded for proceedings consistent with this opinion.

Judgment reversed in part
and the cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

---

DONNA J. CARR
FOR THE COURT

WHITMORE, P. J.
DICKINSON, J.
CONCUR.

APPEARANCES:

STEPHEN W. FUNK, Attorney at Law, for Appellants.

PATRICK J. KEATING, WILLIAM D. DOWLING, and MATTHEW R. DUNCAN, Attorneys at Law, for Appellee.

DARRYL E. GORMLEY, Attorney at Law, for Appellee.