[Cite as *Thomas v. Bauschlinger*, 2015-Ohio-281.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

SEAN A. THOMAS, et al.

  Appellants

  v.

JIM BAUSCHLINGER

  Appellee

C.A. No.  27240

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.  CV-2011-11-6168

DECISION AND JOURNAL ENTRY

Dated: January 28, 2015

BELFANCE, Presiding Judge.

{¶1} Plaintiffs-Appellants Sean Thomas and David Thomas (collectively, "Appellants") appeal the judgment of the Summit County Court of Common Pleas awarding summary judgment to Jim Bauschlinger, the Building Commissioner for the City of Barberton. For the reasons set forth below, we affirm in part and reverse in part.

I.

{¶2} In 2009, Sean Thomas was living in the home that had belonged to his mother, Ruth Kiefer, at the time of her death. The building consisted of two apartments: a lower apartment where Sean Thomas resided and an upper apartment that Sean Thomas leased to a friend. Sometime in early 2009, squatters moved into the upper apartment while Sean Thomas's friend was in the hospital. At Sean Thomas's request, police came to take pictures of the upper apartment but did not remove the squatters. Eventually, the squatters left, and Sean Thomas and his father David Thomas began to repair the upper apartment.

{¶3} On November 19, 2009, Tammy Frost, a property maintenance inspector for the city of Barberton, sent a certified letter addressed to "Ruth Kiefer, deceased[,] C/O Sean Thomas" to the property, which was signed for on November 23, 2009. In the letter, Ms. Frost indicated that the structure had been found to be "'Unsafe for Human Occupancy'" pursuant to Section 108.1.3 of the ICC International Property Maintenance Code based on information passed along by Barberton police officers and been condemned. Ms. Frost also indicated that the city planned to demolish the structure. However, on November 22, 2009, a day prior to the letter being delivered, Barberton police officers arrested Sean Thomas for trespassing in the structure.

{¶4} Sean Thomas was eventually convicted of criminal trespass, which was affirmed on appeal due to his failure to include a transcript of the proceedings. *State v. Thomas*, 9th Dist. Summit No. 25244, 2011-Ohio-912, ¶ 8 ("*Thomas I*"). Appellants attempted to appeal the condemnation decision, but the common pleas court dismissed their appeal for lack of standing. On appeal, this Court affirmed the decision of the lower court, concluding the record did not contain sufficient evidence to establish that Sean Thomas was an heir to the property. *Thomas v. Bldg. Dept. of Barberton*, 9th Dist. Summit No. 25628, 2011-Ohio-4493, ¶ 9 ("*Thomas II*").

{¶5} Following this Court's decision in *Thomas II*, Appellants filed the complaint in this action, alleging claims against the mayor of Barberton, the prosecutor who had prosecuted the case against Sean Thomas, and Mr. Bauschlinger. The defendants filed a motion to dismiss the complaint for failure to state a claim, which the trial court granted. On appeal, this Court affirmed the dismissals of the mayor and the prosecutor but reversed the dismissal with regard to Mr. Bauschlinger, concluding "[t]aking as true the allegations of the complaint, we cannot say that there exists no set of facts by which the Thomases could establish that Mr. Bauschlinger acted manifestly outside the scope of his employment or with malicious purpose, in bad faith, or

in a wanton or reckless manner." (Internal quotations and citations omitted.) *Thomas v. Bauschlinger*, 9th Dist. Summit No. 26485, 2013-Ohio-1164, ¶ 23 ("*Thomas III*").

{¶6} On remand, the trial court set a period for discovery; after the time for discovery had expired, however, Appellants moved for an extension of time and for the trial court to compel Mr. Bauschlinger to answer interrogatories Appellants had submitted to him. Mr. Bauschlinger moved in opposition to Appellants' motions and also moved for summary judgment, arguing that Appellants lacked standing to bring the complaint, that their claims were barred by res judicata, and that he was immune pursuant to R.C. 2744.03(A)(6). Appellants filed a reply in opposition to the motion for summary judgment, and the trial court granted Mr. Bauschlinger's motion, determining that there was no genuine dispute of fact that Mr. Bauschlinger was immune pursuant to R.C. 2744.03(A)(6). The trial court also determined that Appellants lacked standing to seek damages related to the demolition of the structure itself, and overruled Appellants' motions to compel and to extend discovery.

{¶7} Appellants have appealed, raising eight assignments of error for our review. For ease of discussion, we have rearranged their assignments of error and address some of the assignments of error together.

II.

{¶8} Before addressing, the assignments of error, we initially note that Appellants have been acting pro se throughout these proceedings. It is well established that pro se litigants should be granted reasonable leeway, and their motions and pleadings should be construed liberally so as to decide the issues on the merits as opposed to technicalities. *See, e.g., Pascual v. Pascual*, 9th Dist. Medina No. 12CA0036-M, 2012-Ohio-5819, ¶ 5. "However, a pro se litigant is presumed to have knowledge of the law and correct legal procedures so that he remains subject

to the same rules and procedures to which represented litigants are bound. He is not given greater rights than represented parties, and must bear the consequences of his mistakes." (Internal quotations and citations omitted.) *Id*. It is not this Court's duty to create an appellant's argument for him. *See Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, \*8 (May 6, 1998); App.R. 16(A)(7).

### ASSIGNMENT OF ERROR II

THE COURT ERR[ED] IN NOT AD[D]RESSING PLAINTIFFS THOMAS' [(SIC)] DEFENSE OF LACK OF DISCOVERY.

{¶9} Appellants argue in their second assignment of error that the trial court failed to address their argument pursuant to Civ.R. 56(F) that, due to Mr. Bauschlinger's actions during discovery, they could not set forth facts to oppose his motion for summary judgment.

{¶10} "Initially, we note that courts have broad discretion over discovery matters." (Internal quotations and citations omitted.) *Haley v. Nomad Preservation, Inc.*, 9th Dist. Summit No. 26341, 2013-Ohio-86, ¶ 12. Civ.R. 56(F) provides that

> [s]hould it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

"A party seeking a Civ.R. 56(F) continuance has the burden of stating a factual basis and reasons why the party cannot present sufficient documentary evidence without a continuance." (Internal quotations and citations omitted.) *McPherson v. Goodyear Tire & Rubber Co.*, 9th Dist. Summit No. 21499, 2003-Ohio-7190, ¶ 15. "Further, the party must do more than assert a general request; it must demonstrate that a continuance is warranted." (Internal quotations and citations omitted.) *Id*. "This Court has stated that [t]he affidavit requirement is no mere trifle. To obtain a continuance under Civ.R. 56(F), a party must file an affidavit that sets forth why it is unable to

present sufficient facts to rebut a motion for summary judgment." (Internal quotations and citations omitted.) *King v. Rubber City Arches, L.L.C.*, 9th Dist. Summit No. 25498, 2011-Ohio-2240, ¶ 35. In addition, we note that, generally, a trial court has discretion to grant a stay of discovery pending resolution of a dispositive motion. *See State ex rel. Ebbing v. Ricketts*, 133 Ohio St.3d 339, 2012-Ohio-4699, ¶ 21.

{¶11} Although Appellants argue on appeal that the trial court failed to address their Civ.R. 56(F) arguments, the trial court did address this issue below in its order overruling Appellants' motion for an extension of discovery and a motion to compel Mr. Bauschlinger to amend his answers to their interrogatories. In the portion of the order denying Appellants' Civ.R. 56(F) request, the trial court noted,

> [Appellants] assert in their Objections to Defendant's Motion for Summary Judgment that they have been denied discovery and thus cannot submit affidavits to oppose [Mr. Bauschlinger's] Motion for Summary Judgment. Despite this unsworn statement in the body of their Objections, [Appellants] produce[d] three affidavits concerning the facts and events to refute [Mr. Bauschlinger's] Motion for Summary Judgment. * * * Furthermore, none of these affidavits contain averments that [Appellants] are unable [to] present by affidavit the facts essential to oppose the motion for summary judgment. * * * Moreover, the Court found * * * that [Mr. Bauschlinger's] discovery responses in this case were completed prior to the discovery deadline and within sufficient time to prepare an opposition to a summary judgment motion.

Appellants do not challenge any of the trial court's findings or conclusions. *See* App.R. 16(A)(7). Nor do they point to any portion of their affidavits which "sets forth why it is unable to present sufficient facts to rebut a motion for summary judgment[,]" and our own review of the summary judgment materials has not uncovered any such averment. (Internal quotations and citations omitted.) *King* at ¶ 35.

{¶12} While we must liberally construe a pro se litigant's arguments, it is not this Court's duty to create those arguments for them. *See Pascual*, 2012-Ohio-5819, at ¶ 5; *Cardone*,

1998 WL 224934, at *8. Thus, in light of the limited argument, the Appellants' failure to comply with the affidavit requirement of Civ.R. 56(F), and our own review of the record, we cannot conclude that the trial court erred when it denied Appellants' Civ.R. 56(F) request. Accordingly, Appellants' second assignment of error is overruled.

## ASSIGNMENT OF ERROR I

THE COURT ERR[ED] IN GRANTING SUMMARY JUDGMENT[] WHEN DEFENDANT BAUSCHLINGER DID NOT MEET ITS BURDEN OF PROOF[.]

## ASSIGNMENT OF ERROR III

THE COURT ERR[ED] IN FINDING PRO[P]ER NOTICE WAS GIVEN BEFOR[E] CONDEMNATION OF PROPERTY.

## ASSIGNMENT OF ERROR IV

THE COURT ERR[ED] IN FINDING THAT PLAINTIFFS WERE AFFORDED TIME TO MAKE REPAIRS[] OR THAT DEMOLITION WAS NECESSARY[.]

## ASSIGNMENT OF ERROR V

COURT ERR[ED] IN FINDING THAT NO INSPECTION WAS REQUESTED[] AND IN ITS FAILURE TO ADDRESS THAT NO INSPECTION WAS MADE OF THE PROPERTY BEFORE CONDEMNATION[.]

## ASSIGNMENT OF ERROR VI

THE COURT ERR[ED] IN FINDING BAUSCHLINGER HAD NO DUTY TO PROTECT PERSONAL PROPERTY HE HAD TAKEN CUSTODY OF[] OR TO RETURN SAID PROPERTY TO ITS OWNERS[] OR[ ]TO PROTECT REAL PROPERTY[] ALSO TAKEN INTO HIS CUSTODY[.]

## ASSIGNMENT OF ERROR VII

THE COURT ERR[ED] IN FINDING THAT SEAN DID NOT HAVE AT LEAST PARTIAL OWNERSHIP OF THE PROPERTY, THAT OWNERSHIP WAS REQUIRED, AND THAT HE DID NOT PRESENT EVIDENCE[.]

ASSIGNMENT OF ERROR VIII

THE COURT ERR[ED] IN GOING BEYOND THE PLEADING IN MAKING
ITS DECI[S]ION.

{¶13}  In their remaining assignments of error, Appellants argue that the trial court erred in awarding summary judgment to Mr. Bauschlinger.

{¶14}  This Court reviews an award of summary judgment de novo.  *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).  "We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party."  *Garner v. Robart*, 9th Dist. Summit No. 25427, 2011-Ohio-1519, ¶ 8.  Pursuant to Civ.R. 56(C), summary judgment is appropriate when:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).  To succeed on a summary judgment motion, the movant bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case.  *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "'must set forth specific facts showing that there is a genuine issue for trial.'"  *Id*. at 293, quoting Civ.R. 56(E).

{¶15}  In their complaint, Appellants alleged that Mr. Bauschlinger had acted in a wanton or reckless manner in condemning and demolishing the house where Sean Thomas resided in 2009.  Appellants sought to recover the value of the home, the value of the personal property left in the home when the house was destroyed, and for the infliction of emotional

distress. In Mr. Bauschlinger's amended answer, he denied Appellants' averments set forth in their claims and raised several affirmative defenses, including that Appellants' claims were barred by res judicata and collateral estoppel.

{¶16} Following a period of discovery, Mr. Bauschlinger moved for summary judgment. In his motion for summary judgment, he argued that he was entitled to summary judgment because he was immune from liability, because Appellants lacked standing to assert their claims, and because their claims were barred by collateral estoppel. The trial court concluded that Appellants lacked standing to recover any damages from the demolition of the structure itself but did have standing to seek damages for the loss of personal property in the home. However, the trial court also concluded that Mr. Bauschlinger was immune from liability because he acted within the course of his employment and did not act in a wanton or willful manner. The trial court went on to conclude that Mr. Bauschlinger waived the affirmative defense of res judicata and collateral estoppel by not raising it in his answer and that, even if he had not waived the defense of collateral estoppel, collateral estoppel would not apply in this case.[1]

**Standing**

{¶17} "It is an elementary concept of law that a party lacks standing to invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the subject matter of the action." (Internal quotations and citations omitted.) *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, ¶ 22. "Where the party does not rely on any specific statute authorizing invocation of the judicial process, the question of standing depends on whether the party has alleged * * * a personal stake in the

---

[1] We note that the applicability of res judicata or collateral estoppel is not before us in this appeal because Mr. Bauschlinger has not challenged the trial court's determination on this issue.

outcome of the controversy." (Internal quotations and citations omitted.) *Id*. at ¶ 21. Thus, the question in this case is whether Sean Thomas had a personal stake in the 315 Lucas Street property prior to its demolishment.[2]

{¶18} Mr. Bauschlinger argued in his motion for summary judgment that Sean Thomas lacked standing to seek damages related to the demolition because he was not the titled owner of the property. In support, Mr. Bauschlinger submitted a copy of a deed that listed Ms. Kiefer as the owner of 315 Lucas Street. He also submitted copies of the decisions from the common pleas court and this Court in Sean Thomas's administrative appeal of the condemnation order. In response, Sean Thomas submitted an affidavit asserting that he was the son of Ms. Kiefer.

{¶19} In its entry granting Mr. Bauschlinger's motion for summary judgment, the trial court discussed this Court's holding in *Thomas II* and then made the following determinations:

> Plaintiff Sean Thomas encounters the same evidentiary hurdles in this case to establish standing to seek damages for the demolition of the real property [as in *Thomas II*]. He simply states that he is an heir of Ruth Kiefer. Similar to the administrative appeal, Plaintiff Sean Thomas has failed to present evidence that he is an heir entitled to inherit the house at 315 Lucas. *See* [*Thomas II* at ¶ 9]. Nor has Sean presented any other evidence proving he was the titled owner of the real property. [] As a matter of law, Plaintiff Sean Thomas does not have standing to seek damages for the demolition of the real property or the loss of use of the real property.

{¶20} From its statements in its journal entry, it appears that the trial court believed that Sean Thomas, in order to avoid the dismissal of his claims, had to demonstrate that he had standing to pursue them. However, this is a misapplication of the summary judgment standard. While Sean Thomas must ultimately demonstrate standing in order to be entitled to relief, it was Mr. Bauschlinger's burden on summary judgment to demonstrate that there was no dispute as a

---

[2] Appellants have not challenged the trial court's conclusion that David Thomas did not have standing to assert a claim regarding the real property in this case. *See* App.R. 16(A)(7). We confine our analysis accordingly.

matter of law that Sean Thomas lacked any real interest in the property.[3] Therefore, before addressing the question of what evidence Sean Thomas had presented to demonstrate that he was an heir, the trial court should have examined the evidence presented by Mr. Bauschlinger.

{¶21} There is no dispute that Ms. Kiefer had passed away without a will prior to the events at issue in this case, nor is there any dispute that she was the owner of 315 Lucas Street at the time that she died. Therefore, at the time of the condemnation proceeding, legal title to 315 Lucas Street had passed to an heir or possibly heirs. *See Kirshner v. Fannie Mae*, 6th Dist. Lucas No. L-11-1027, 2012-Ohio-286, ¶ 15, quoting *Overturf v. Dugan*, 29 Ohio St. 230 (1876), paragraph one of the syllabus ("Ordinarily, lands of an intestate descend at once to the intestate's heirs, and legal title vests in such heirs, 'subject to the right of the administrator to sell the same for the payment of the debts of the intestate.'"). *See also Winters Natl. Bank & Trust Co. v. Riffe*, 2 Ohio St.2d 72, 76 (1965) ("The rule is and has long been that in intestate estates, where heirs take by way of inheritance, they take title to the real estate immediately upon the death of the intestate, and the heirs, rather than the administrator, are directly entitled to real estate rents from the date of death.").

{¶22} However, Mr. Bauschlinger did not present any evidence regarding Sean Thomas's absence of any right to inherit from Ms. Kiefer. *See* R.C. 2105.06 (setting forth intestate inheritance).[4] Nor did he make any such argument in his motion for summary

---

[3] By contrast, *Thomas II* was not an appeal from a motion for summary judgment but, rather, an administrative appeal. In that case, Sean Thomas appeared pro se, and the record was devoid of evidence that established Sean Thomas's standing to appeal. *Thomas II*, 2011-Ohio-4493, at ¶ 8-9. In this case, Sean Thomas' burden only arises if Mr. Bauschlinger met his burden. Thus, *Thomas II*, which decided the narrow issue of whether the common pleas court erred in its dismissal of an administrative appeal from the BZA's determination is not dispositive of this case.

[4] For example, it is possible that Sean Thomas is not a biological child of Ruth Kiefer, despite being referred to as her "son."

judgment. *See Hunting Natl. Bank v. Calvert*, 9th Dist. Summit No. 25684, 2012-Ohio-2883, ¶ 20 (A trial court may not grant summary judgment on grounds not raised.). Instead, he focused solely upon Ms. Kiefer's name being on the deed at the time of condemnation, which occurred after her death. Given Mr. Bauschlinger's argument in his summary judgment motion and his failure to present any evidence that would call into doubt Sean Thomas's right to inherit the property, the trial court erred when it awarded summary judgment to Mr. Bauschlinger on the issue of standing.

**Sovereign Immunity**

{¶23} Having concluded that there is at least a dispute of material fact as to whether Sean Thomas was entitled to pursue a complaint for damages related to the demolished structure at 315 Lucas Street, we next turn to the question of whether Mr. Bauschlinger was immune pursuant to R.C. 2744.03(A)(6). R.C. 2744.03(A)(6) provides,

> In a civil action brought against * * * an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, * * * the employee is immune from liability unless one of the following applies:
>
> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
>
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

{¶24} We initially note that the parties do not dispute that Mr. Bauschlinger is an employee of a political subdivision. *See* R.C. 2744.03(A)(6); R.C. 2744.01(B) ("'Employee'

means an officer, agent, employee, or servant, whether or not compensated or full-time or part-time, who is authorized to act and is acting within the scope of the officer's, agent's, employee's, or servant's employment for a political subdivision. * * * 'Employee' includes any elected or appointed official of a political subdivision."). Rather, the dispute in this case is whether Mr. Bauschlinger's actions fell manifestly outside the scope of his employment as the Building Commissioner for the City of Barberton or whether he acted with a malicious purpose, in bad faith, or in a wanton or willful matter.[5] *See* R.C. 2744.03(A)(6)(a)-(b).

**Manifestly Outside the Scope of Employment**

{¶25} R.C. Chapter 2744 does not define what conduct is "manifestly outside the scope of the employee's employment or official responsibilities." R.C. 2744.03(A)(6)(a). However, Ohio courts have generally held that "'conduct is within the scope of employment if it is initiated, in part, to further or promote the master's business.'" *Curry v. Blanchester*, 12th Dist. Clinton Nos. CA2009-08-010, CA2009-08-012, 2010-Ohio-3368, ¶ 30, quoting *Jackson v. McDonald*, 144 Ohio App.3d 301, 307 (5th Dist.2001). "For an act to fall within the scope of employment, it must be 'calculated to facilitate or promote the business for which the [employee or agent] was employed.'" *Johnson v. Godsey*, 2d Dist. Clark No. 2012 CA 80, 2013-Ohio-3277, ¶ 32, quoting *Osborne v. Lyles*, 63 Ohio St.3d 326, 329 (1992). "In general, if an act is committed within the scope of employment, it will be authorized, either expressly or impliedly, by the employer." *Johnson* at ¶ 32. "'It is only where the acts of state employees are motivated by actual malice or other [situations] giving rise to punitive damages that their conduct may be outside the scope of their state employment.'" *Curry* at ¶ 30, quoting *Jackson* at 307. "The act

---

[5] Appellants do not argue that civil liability is expressly imposed on him by the Revised Code. R.C. 2744.03(A)(6)(c). Thus, we limit our discussion to the first two immunity exceptions.

must be so divergent that it severs the employer-employee relationship." (Internal quotations and citations omitted.) *Wee Care Child Ctr., Inc. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 13AP-1004, 2014-Ohio-2913, ¶ 28. "One acts with a malicious purpose if one willfully and intentionally acts with a purpose to cause harm." *Moss v. Lorain Cty. Bd. of Mental Retardation*, 185 Ohio App.3d 395, 2009-Ohio-6931, ¶ 19 (9th Dist.).

{¶26} On appeal, Appellants argue that the trial court improperly concluded that Mr. Bauschlinger did not act manifestly outside his employment when he condemned the house in this case and ordered it demolished. In support, they point to the Barberton Municipal Code sections concerning the enforcement of the city's maintenance code. Specifically, Appellants point to Barberton Municipal Code 1462.04 and 1350.03(b)(3). Barberton Municipal Code 1462.04 provides that "[t]he ICC International Property Maintenance Code, as adopted in Section 1462.01, shall be enforced by the Building Commissioner in accordance with Section 1350.03 of the Barberton Development Code * * *." Pursuant to Barberton Municipal Code 1350.03(b)(3), "the Commissioner shall request the Director of Law to file an action in court to correct the violation[]" if a violator has not taken steps to correct the violation or to challenge the validity of the violation. According to Appellants, when read in tandem, Barberton Municipal Code 1462.04 and 1350.03(b)(3) do not permit the Building Commissioner to condemn and demolish a structure under his own authority; instead, Barberton Municipal Code 1350.03(b)(3) implicitly requires the Commissioner to request that the law director file an action in court to have a property condemned and demolished.

{¶27} However, assuming for the sake of argument that Appellants' interpretation of the Barberton Municipal Code is correct, we are unconvinced that the Mr. Bauschlinger's failure to follow the proper demolition procedure would render his actions "manifestly outside the scope of

[his] employment" as Building Commissioner. R.C. 2744.03(A)(6)(a). As the trial court noted in its entry granting summary judgment, the ICC International Property Maintenance Code, which the City of Barberton had adopted as its Maintenance Code in Barberton Municipal Code 1462.01, authorized the Building Commissioner to order the condemnation and demolition of a structure. Furthermore, multiple sections of the Barberton Municipal Code explicitly set forth the enforcement of the Maintenance Code as one of the Building Commissioner's duties. There is no evidence in the record that could support the conclusion that Mr. Bauschlinger acted to further his own personal agenda rather than that of the city of Barberton, his employer, when he ordered the house condemned and demolished. *See Curry* at ¶ 30; *Wee Care Child Ctr., Inc.* at ¶ 28. Thus, in light of the evidence in the record and the limited arguments on appeal, we cannot conclude that there is a genuine dispute of fact on this question or that the trial court erred as a matter of law in its determination that Mr. Bauschlinger's actions were not manifestly outside the scope of his employment. *See* R.C. 2744.03(A)(6)(a).

**Malicious Purpose, Bad Faith, or Willful or Wanton Manner**

{¶28} We turn to the other potential exception to general grant of immunity in R.C. 2744.03(A)(6). Pursuant to R.C. 2744.03(A)(6)(b), an employee of a political subdivision is not immune from civil liability if "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." As noted above, "[o]ne acts with a malicious purpose if one willfully and intentionally acts with a purpose to cause harm." *Moss*, 185 Ohio App.3d 395, 2009-Ohio-6931, at ¶ 19. "Bad faith is defined as a dishonest purpose, moral obliquity, conscious wrongdoing, [or] breach of a known duty through some ulterior motive or ill will." (Internal quotations and citations omitted.) *Id*. "Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose

not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, paragraph two of the syllabus. "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Id*. at paragraph three of the syllabus.

{¶29} In Mr. Bauschlinger's motion for summary judgment, he argued that there was no evidence that he had acted in a willful or wanton manner in his actions towards Appellants and the property at issue in this case. Appellants responded, arguing that Mr. Bauschlinger had condemned the property without conducting an interior inspection and without giving the proper notice of the condemnation. They also argued that the notice they did receive failed to list the repairs that the property allegedly needed and that Appellants did not have an opportunity to make the repairs. Finally, Appellants argued that Mr. Bauschlinger improperly prohibited them from entering the property to secure it or to retrieve their personal property despite repeated requests.

**The House**

{¶30} In Mr. Bauschlinger's motion for summary judgment, his argument about whether Appellants could prevail on the question of willful or wanton misconduct focused solely on the issue of the personal property. Thus, Mr. Bauschlinger never addressed Appellants' allegation that no interior inspection had occurred or otherwise argue that condemning and demolishing a house without conducting such an inspection could not constitute willful or wanton misconduct on his part. *See Thomas III*, 2013-Ohio-1164, at ¶ 23 (noting that the facts alleged by Appellants, including the allegation that the house had been condemned without an interior inspection occurring, could support a finding of willful or wanton misconduct by Mr.

Bauschlinger). Given the limited basis articulated for summary judgment in Mr. Bauschlinger's motion, we conclude that he failed to meet his initial *Dresher* burden of demonstrating that there was no material dispute that he was entitled to immunity regarding the condemnation and demolition of the house. *See Smith v. Ray Esser & Sons, Inc.*, 9th Dist. Lorain No. 10CA009798, 2011-Ohio-1529, ¶ 12-14.

**The Personal Property**

{¶31} During his deposition, David Thomas testified that he had requested permission on his behalf and for Sean Thomas to enter the property to retrieve their personal belongings. David Thomas also testified that Mr. Bauschlinger repeatedly told him that "he had no authority to allow [Appellants] to return to the property. * * * He seemed to revel in the fact that he did[.]" However, Mr. Bauschlinger averred in his affidavit that, "[i]f [he] or the Building Inspection Division receive[] a request to remove personal property, our procedure is to allow removal of personal property provided no one occupies the structure until the condemnation notice is lifted." Inherent in Mr. Bauschlinger's averment is his apparent authority to allow access to a condemned structure, contradicting his alleged statements to David Thomas that he lacked the authority to do so. Thus, when viewed in the light most favorable to Appellants, a trier of fact could conclude from this that Mr. Bauschlinger was intentionally misleading the Appellants. Furthermore, it is clear that, if he refused access under the circumstances of this case, Mr. Bauschlinger was violating the policies of his department without cause. [6]

{¶32} Viewing all of this evidence in the light most favorable to Appellants, there is a genuine dispute of fact as to whether Mr. Bauschlinger purposefully behaved in a wrongful

---

[6] Out of an abundance of caution, we note that there may be situations where refusing entry to a structure would be reasonable or even necessary. For example, it could be justifiable to not allow entry into a structure if it was in danger of imminent collapse or if it was full of toxic mold. However, no party is arguing that those situations are present in this case.

manner with knowledge of the likelihood of resulting injury. *See Anderson*, 134 Ohio St.3d 380, 2012-Ohio-5711, at paragraph two of the syllabus. Mr. Bauschlinger averred that the department's policy was to permit the recovery of personal property, implicitly conceding his authority and obligation to grant access to the house; nevertheless, according to Appellants, Mr. Bauschlinger refused to permit them to recover their personal property from inside the structure in contravention to department policy.[7] Given that the City planned to demolish the house, and eventually did, it would be reasonable to conclude that Mr. Bauschlinger was aware that not permitting or providing a meaningful opportunity for Appellants to retrieve their personal property would result in the destruction of the property, i.e. result in harm to appellants.

{¶33} Accordingly, we conclude that the trial court erred when it granted summary judgment to Mr. Bauschlinger on the basis of sovereign immunity.

**Lack of Notice**

{¶34} In their third assignment of error, Appellants argue that the trial court improperly concluded that they had received notice of the condemnation of the property. Their argument is entirely based around the assertion that there was no evidence that the notice was sent via certified mail or received by Sean Thomas. However, the record contains a copy of the dated letter as well as a receipt signed by Sean Thomas. Thus, based on their limited argument, we cannot conclude that the trial court erred when it determined that Appellants had received notice of the condemnation. *See* App.R. 16(A)(7).

**Conclusion**

---

[7] Although Appellants concede that they were permitted to enter the home on two occasions, they testified during their depositions and averred in their affidavits that they were only permitted to remain in the home for a short period of time that was insufficient to actually retrieve their personal belongings.

**{¶35}** To the extent Appellants argue that they did not receive proper notice of the condemnation, that argument is without merit. However, to the extent they argue that the trial court erred in granting summary judgment on the basis of sovereign immunity and Sean Thomas' lack of standing, their assignments of error are sustained.

### III.

**{¶36}** Appellants' second and third assignments of error are overruled. Their remaining assignments of error are sustained. The judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part, and the matter is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,<br>
reversed in part,<br>
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

 

 

 

EVE V. BELFANCE
FOR THE COURT


CARR, J.
WHITMORE, J.
CONCUR.


APPEARANCES:

SEAN A. THOMAS and DAVID C. THOMAS, pro se, Appellants.

ROBERT P. LYNCH, JR., Attorney at Law, for Appellee.