[Cite as *Coterel v. Reed*, 2016-Ohio-7411.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### GREENE COUNTY

DAVID W. COTEREL, JR., et al.  :
            :  Appellate Case No. 2015-CA-69
   Plaintiff-Appellees   :
            :  Trial Court Case No. 2013-CV-515
v.            :
            :  (Civil Appeal from
JAMES PAUL REED     :   Common Pleas Court)
            :
   Defendant-Appellant  :
            :

. . . . . . . . . . .

## O P I N I O N

Rendered on the 21st day of October, 2016.

. . . . . . . . . . .

MICHAEL P. McNAMEE, Atty. Reg. No. 0043861, and GREGORY B. O'CONNOR, Atty. Reg. No. 0077901, McNamee & McNamee, PLL, 2625 Commons Boulevard, Beavercreek, Ohio 45431
   Attorneys for Plaintiff-Appellees

LAWRENCE E. BARBIERE, Atty. Reg. No. 0027106, and SCOTT A. SOLLMANN, Atty. Reg. No. 0081467, Schroeder, Maundrell, Barbiere & Powers, 5300 Socialville-Foster Road, Suite 200, Mason, Ohio 45040
and
ANDREW T. VOLLMAR, Atty. Reg. No. 0064033, Freund, Freeze & Arnold, Fifth Third Center, 1 South Main Street, Suite 1800, Dayton, Ohio 45402-2017
   Attorneys for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

  **{¶ 1}** Defendant-appellant James Paul Reed appeals from an order of the trial

court overruling a motion for summary judgment on the issue of statutory immunity for actions taken as an employee of a political subdivision. Reed argues that Coterel has failed to present genuine issues of fact to prevail on his claims for relief. Coterel argues that genuine issues of fact preclude summary judgment.

{¶ 2} We agree with the trial court that there are genuine issues of material fact whether Reed acted with a malicious purpose, in bad faith, in a wanton or reckless manner, or manifestly outside the scope of his employment. Therefore, the order of the trial court overruling the motion for summary judgment is Affirmed.

### I. The Relationship Between Coterel and Reed

{¶ 3} Reed was elected to the Xenia Township Board of Trustees, and served as a Trustee for a four year term, 2010-2014. Early in his term of office, Reed befriended Coterel, a local business owner. Coterel is the owner of a motorcycle dealership, Buckminn's D&D Harley Davidson; a motor vehicle racetrack, Kil-Kare, Inc.; and a salvage yard, Kil-Kare Auto Wrecking. Both the racetrack and the salvage yard are primarily located in Xenia Township. Reed stated that during the time when he and Coterel were on friendly terms, he did numerous favors for Coterel, saving Coterel a substantial sum of money. Coterel stated that in exchange for those favors, Reed expected money or other favors in return, in the form of campaign contributions, referral fees, discounts on sales, and a job for Reed's wife at the racetrack. One such expected quid pro quo was described by Darana Edmondson, a Buckminn's employee, in her deposition and affidavit. Edmondson testified that when Reed came into the business and became irate because Darana would not give Reed's wife an employee discount on a

clearance priced item, Reed declared that if it wasn't for him, Coterel would be in jail and the business would be closed. Coterel believes that Reed was responsible for numerous inspections and inquiries from other governmental officials, including the zoning inspector, the fire inspector, the health department and the liquor control authorities. Coterel stated that very few infractions were found, and all were immediately remedied.

{¶ 4} The friendly relationship between Reed and Coterel ended in the spring of 2012, after Reed's wife worked at the racetrack for about a month. In his affidavit, Coterel avers that Reed called him to complain that Reed's wife was being harassed on the job and Reed insisted that Coterel protect her by hiring an off-duty deputy during her work shift. Coterel avers that when he refused, Reed made comments suggesting that the county sheriff was concerned about the situation at Kil-Kare, but Reed insisted that the sheriff would not meet with Coterel to discuss it. Coterel testified in his deposition that during this conversation with Reed, Coterel asked, "what's it going to take to get you off my back, fifteen, twenty thousand dollars?", and Reed replied, "I think twenty-five would do it." Coterel Deposition, Dkt. #84, pg. 160, lines 17-22.

{¶ 5} In the fall of 2012, Coterel hired a contractor, Slip-Tech, Inc., to do some construction at the racetrack. Michael Fouts, the President of Slip-Tech provided an affidavit in which it is averred that Fouts was instructed by Reed to stop work immediately, and that Kil-Kare would not be permitted to do any further construction without Reed's approval. Fouts worked with the zoning inspector and provided an engineer's report to verify compliance with local floodplain regulations, but the project was delayed several months until a variance was approved. Marshall Foiles, the manager of Buckminn's, stated in an affidavit and at his deposition that Reed also had direct contact with two other

contractors by asking one for a campaign contribution, and the other for some type of referral fee, because he expected them to "share the love." When questioned at his deposition, Reed did not remember these events or asserted they did not happen.

## II. The Course of Proceedings

{¶ 6} Coterel, in his individual capacity and as the principal of Buckminns and Kil-Kare, Inc., brought this action against Reed in June, 2013, alleging five claims for relief: Violations of the Corrupt Activities Act; Tortious Interference with Business Relations; Breach of Public Trust and Official Duty; Violations of the Ohio Sunshine Law; and Defamation. The claim alleging Breach of the Public Trust was voluntarily dismissed. The claim for violations of the Sunshine law was dismissed by the trial court, and is not raised as an issue in this appeal.

{¶ 7} In this action, Coterel seeks to hold Reed personally liable for actions taken while he served as an elected official for Xenia Township. Xenia Township is not named as a party. Reed moved for summary judgment, seeking a dismissal of the claims based on statutory immunity. The trial court overruled the motion for summary judgment, concluding that genuine issues of fact exist regarding Reed's alleged malicious conduct. From the trial court order overruling his motion for summary judgment upon the ground of governmental employee immunity, Reed appeals.

## III. The Scope of this Appeal and the Standard of Review

{¶ 8} The trial court's order denying summary judgment on the merits of the claims for relief is not a final appealable order, those claims not having been reduced to

judgment. The trial court order overruling summary judgment on any issue other than the immunity defense is not a final appealable order. Therefore, our decision is solely addressed to the immunity defenses, and is not concerned with the merits of the pending claims, or the other, non-immunity, defenses that remain pending in the trial court.

{¶ 9} The Supreme Court of Ohio has declared that an order that denies the benefit of an alleged immunity is a final appealable order under R.C. 2744.02(C). *Hubbell v. City of Xenia,* 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 2; *Summerville v. City of Forest Park,* 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 33. Generally, a trial court's denial of a motion for summary judgment based on the existence of genuine issues of fact is not a final appealable order. *Vlcek v. Chodkowski*, 2015-Ohio-1943, 34 N.E.3d 446, ¶ 33 (2d Dist.). We have held that, "an appeal from an order denying immunity is limited to the review of alleged errors in the portion of the trial court's decision which denied the political subdivision the benefit of immunity." *Id.* at ¶ 35, citing *Guenther v. Springfield Twp. Trustees,* 2012-Ohio-203, 970 N.E.2d 1058, ¶ 24 (2d Dist.).

{¶ 10} The Fourth District Court of Appeals has addressed the reviewing court's role in an appeal involving statutory immunity by stating:

"Generally, the denial of summary judgment is not a final, appealable order." (Citations omitted.) However, a trial court's order to deny summary judgment on the basis of statutory immunity constitutes a final order. (Citations omitted.) R.C. 2744.02(C) explicitly states that an order denying "a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order." However, appellate review under R.C.

2744.02(C) is limited to the denial of immunity. See *Nagel v. Horner,* 162 Ohio App.3d 221, 2005-Ohio-3574, 833 N.E.2d 300, ¶ 21 (stating that R.C. 2744.02(C) limits appellate review to denial of immunity and does not authorize court to review merits of the action); *Makowski v. Kohler,* Summit App. No. 25219, 2011-Ohio-2382, ¶ 7 (stating that an R.C. 2744.02(C) appeal "is limited to the review of alleged errors in the portion of the trial court's decision which denied the political subdivision the benefit of immunity"); see, also, *Essman* [*v. Portsmouth,* 4th Dist. Scioto No. 08CA3244, 2009-Ohio-3367]; *CAC Bldg. Properties v. City of Cleveland,* Cuyahoga App. No. 91991, 2009-Ohio-1786, ¶ 9, fn. 1; *Carter v. Complete Gen. Constr. Co.,* Franklin App. No. 08AP-309, 2008-Ohio-6308, ¶ 8. Thus, a party may not raise other alleged errors concerning the denial of summary judgment.

*Long v. Hanging Rock,* 4th Dist. Lawrence No. 09CA30, 2011-Ohio-5137, ¶ 10.

{¶ 11} The issue of governmental immunity is a question of law. *Conley v. Shearer,* 64 Ohio St.3d 284, 595 N.E.2d 862 (1992). When presented with a question of law, we apply a de novo standard of review. *Hayward v. Summa Health Sys./Akron City Hosp.,* 139 Ohio St.3d 238, 2014-Ohio-1913, 11 N.E.3d 243, ¶ 23. Appellate courts also employ a de novo standard of review for reviewing summary judgment motions. *Gilson v. Am. Inst. of Alternative Medicine,* 10th Dist. Franklin No. 15AP-548, 2016-Ohio-1324, ¶ 48. In a de novo review, the trial court's decision is not given deference by the reviewing appellate court; the same standard that the trial court should have used is applied, and we examine the evidence to determine whether as a matter of law no genuine issues of

material[1] fact exist for trial. *Riverside v. State*, 2d Dist. Montgomery No. 26840, 2016-Ohio-2881, ¶ 21, citing *Dupler v. Mansfield Journal Co., Inc.,* 64 Ohio St.2d 116, 413 N.E.2d 1187 (1980).

{¶ 12} In a summary judgment review, the court may not weigh the proof or choose among reasonable inferences, and the court is limited to examining the evidence in the light most favorable to the non-moving party. *Dupler* at 121. In the case before us, our review is confined to the issue of statutory immunity for a governmental employee, and we must make all permissible inferences and resolve all questions of credibility in Coterel's favor to determine whether genuine issues of material fact exist, so that a reasonable jury could find that Reed acted with a malicious purpose, in bad faith, in a wanton or reckless manner, or manifestly outside the scope of his employment.

**IV. The Trial Court Did Not Err by Overruling the Motion for Summary Judgment**

{¶ 13} Reed raised one assignment of error, as follows:

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY FAILING TO GRANT SUMMARY JUDGMENT IN FAVOR OF APPELLANT, JAMES PAUL REED AS TO ALL CLAIMS ON THE BASIS OF STATUTORY IMMUNITY UNDER O.R.C. CHAPTER 2744

{¶ 14} Reed asserts that summary judgment should have been rendered in his favor, because he is entitled to governmental immunity as a matter of law. The Ohio immunity statute creates a presumption of immunity for official government acts, carried

---

[1] Because we may only review the governmental-immunity issue, a genuine issue of material fact in this context means an issue of fact material to the issue of governmental immunity.

out by political subdivisions and their employees. *Cook v. Cincinnati,* 103 Ohio App.3d 80, 90, 658 N.E.2d 814 (1st Dist.1995). The Ohio immunity statute provides three exceptions to the general rule favoring governmental immunity. The exceptions at issue are based on R.C. 2744.03(A)(6) (a) and (b), which eliminate a public employee's immunity defense if: (a) "the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities"; or (b) "the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." The trial court did not find that Reed acted manifestly outside the scope of his employment, with a malicious purpose, in bad faith, or in a wanton or reckless manner, but concluded that these are genuine issues of material fact for a jury to determine, so that Reed is not entitled to judgment as a matter of law.

{¶ 15} The case before us involves three claims for relief based on Reed's alleged misconduct. We are not reviewing whether there is factual support for each of the elements of the claims for relief. This appeal is limited in scope to a determination whether there are genuine issues of fact material to the defense for statutory immunity. To overcome the presumption of statutory immunity, the facts must support a conclusion that the employee acted manifestly outside the scope of employment, with a malicious purpose, in bad faith, or in a wanton or reckless manner. When the public employee moves for summary judgment on the issue of statutory immunity, the employee, as the movant, must show that there are no genuine issues of fact material to the determination whether he acted manifestly outside the scope of employment, with a malicious purpose, in bad faith, or in a wanton or reckless manner. Only if he meets that burden does the burden then shift to the non-moving party to establish that genuine issues of material fact

do exist, requiring a jury determination whether the employee acted manifestly outside the scope of employment, with a malicious purpose, in bad faith, or in a wanton or reckless manner. "Consequently, in order to sustain a motion for summary judgment predicated upon immunity bestowed by R.C. 2744.03(A)(6)(b), a court must conclude that the record is devoid of evidence tending to show that the political subdivision employee acted wantonly or recklessly." *Irving v. Austin*, 138 Ohio App.3d 552, 556, 741 N.E.2d 931 (6th Dist.2000).

**{¶ 16}** For purposes of statutory immunity, the definitions of the elements of the defense were recently reviewed by the Fifth District Court of Appeals as follows:

" 'In the context of political subdivision immunity, malicious purpose has been defined as the willful and intentional design to do injury.' " *Friga v. E. Cleveland*, 8th Dist. Cuyahoga No. 88262, 2007-Ohio-1716, ¶ 15, quoting *Piro v. Franklin Twp.*, 102 Ohio App.3d 130, 139, 656 N.E.2d 1035 (9th Dist.1995), citing *Jackson v. Butler Cty. Bd. of Cty. Commrs.*, 76 Ohio App.3d 448, 453, 602 N.E.2d 363 (12th Dist.1991). Bad faith " 'connotes a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.' " *Jackson*, quoting *Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148, 187 N.E.2d 45 (1962), paragraph two of the syllabus.

In *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, the Ohio Supreme Court held "wanton," "willful," and "reckless" describe different and distinct degrees of care and are not interchangeable. *Id.* at paragraph one of syllabus. Although Appellants do not allege

Appellees acted willfully, we have, nonetheless, included that definition herein.

"Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result." *Id.* at ¶ 33. Wanton misconduct has been likened to conduct that manifests a "disposition to perversity," but the Supreme Court abandoned "disposition to perversity" as an element of the definition of wanton misconduct in *Hawkins v. Ivy*, 50 Ohio St.2d 114, 363 N.E.2d 367 (1977). *Id.* at ¶ 28. " '[M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor.' " *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994) (Citation omitted). "[I]t must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury." *Anderson, supra* at ¶ 25 citing *Universal Concrete Pipe Co. v. Bassett*, 130 Ohio St. 567, 200 N.E. 843 (1936), paragraph two of syllabus.

"Willful conduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Anderson, supra* at ¶ 32. Willful misconduct involves "an intent, purpose, or design to

injure." *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 375, 696 N.E.2d 201 (Citation omitted). Willful misconduct is something more than negligence and it imports a more positive mental condition prompting an act than wanton misconduct. *Phillips v. Dayton Power & Light Co.,* (1994), 93 Ohio App.3d 111, 119, 637 N.E.2d 963 (Citation omitted). "Willful misconduct" involves a more positive mental state prompting the injurious act than wanton misconduct, but the intention relates to the misconduct, not the result*. Mashburn v. Dutcher*, 5th Dist., 2012-Ohio-6283, 14 N.E.3d 383, ¶ 45.

Both wanton and willful describes conduct that is greater than negligence and can be summarized as follows: willful conduct is the intent to harm someone and wanton misconduct is the failure to exercise any care whatsoever. *Anderson, supra* at ¶ 48.

"Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at ¶ 34 (Citations omitted).

*Rondy v. Richland Newhope Industries, Inc.,* 2016-Ohio-118, 57 N.E.3d 369, ¶¶ 42-47 (5th Dist.).

{¶ 17} The Ninth District Court of Appeals recently addressed the term "manifestly outside the scope of employment" as that term is used in the immunity statute as follows:

R.C. Chapter 2744 does not define what conduct is "manifestly outside the scope of the employee's employment or official responsibilities."

R.C. 2744.03(A)(6)(a). However, Ohio courts have generally held that " 'conduct is within the scope of employment if it is initiated, in part, to further or promote the master's business.' " *Curry v. Blanchester,* 12th Dist. Clinton Nos. CA2009-08-010, CA2009-08-012, 2010-Ohio-3368, ¶ 30, quoting *Jackson v. McDonald*, 144 Ohio App.3d 301, 307, 760 N.E.2d 24 (5th Dist.2001). "For an act to fall within the scope of employment, it must be 'calculated to facilitate or promote the business for which the [employee or agent] was employed.' " *Johnson v. Godsey*, 2d Dist. Clark No. 2012 CA 80, 2013–Ohio–3277, ¶ 32, quoting *Osborne v. Lyles*, 63 Ohio St.3d 326, 329, 587 N.E.2d 825 (1992). "In general, if an act is committed within the scope of employment, it will be authorized, either expressly or impliedly, by the employer." *Johnson* at ¶ 32. " 'It is only where the acts of state employees are motivated by actual malice or other [situations] giving rise to punitive damages that their conduct may be outside the scope of their state employment.' " *Curry* at ¶ 30, quoting *Jackson* at 307, 760 N.E.2d 24. "The act must be so divergent that it severs the employer-employee relationship." (Internal quotations and citations omitted.) *Wee Care Child Ctr., Inc. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 13AP–1004, 2014–Ohio–2913, ¶ 28. "One acts with a malicious purpose if one willfully and intentionally acts with a purpose to cause harm." *Moss v. Lorain Cty. Bd. of Mental Retardation*, 185 Ohio App.3d 395, 2009–Ohio–6931, 924 N.E.2d 401, ¶ 19 (9th Dist.).

*Thomas v. Bauschlinger*, 9th Dist. Summit No. 27240, 2015-Ohio-281, ¶ 25.

{¶ 18} We will review, for each of the three claims for relief, whether Reed, the movant, met his burden of demonstrating that there are no genuine issues of fact material to the determination whether he acted with a malicious purpose, in bad faith, in a wanton or reckless manner, or manifestly outside the scope of his employment. In the claim for relief alleging that Reed engaged in a pattern of corrupt activities, Reed argues that Coterel cannot prove that any of his actions caused damages or met the definition of extortion. Both of these arguments address the merits of the claim, not the immunity defense. In his claim for relief based on violations of the Ohio Corrupt Activities Act, Coterel is alleging that Reed committed the criminal act of extortion. Extortion is defined, in R.C. 2905.11, as threatening to commit a felony, threatening to commit violence, menacing, uttering or threatening calumny, or threatening to expose any matter tending to damage a person's personal or business repute for the purpose of obtaining something valuable or inducing another to do an unlawful act. Engaging in extortion is not within the proper scope of any public employee's job.   Albeit on different grounds, the trial court's conclusion is correct that Reed is not immune from liability for conduct that constitutes a crime under R.C. 2923.32. Whether there is a genuine issue of fact material to whether Reed committed a violation of R.C. 2923.32 -- i.e., whether Reed is entitled to summary judgment on the merits of this claim – is not within the scope of this appeal.

{¶ 19} The remaining two claims for relief are alleged as torts, to which the immunity statute presumably applies. With respect to the claim based on the tort of defamation, Reed argues that Coterel has failed to provide any evidence establishing what defamatory statements were made, to whom such statements were made, or that Coterel suffered any injury. These factual issues go to the merits of the claim, not to the

elements of the statutory immunity defense. To reach a conclusion that Reed is immune from liability for the alleged defamation, the immunity statute requires the court to determine that there are no genuine issues of fact material to a jury's determination whether Reed acted manifestly outside the scope of his employment, with a malicious purpose, in bad faith, or in a wanton or reckless manner, as specified by R.C. 2744.03(A)(6)(a) and (b), when he made the alleged defamatory statements.

{¶ 20} It has been recognized that the determination whether a governmental employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner "explicitly focuses on the employee's state of mind." *Chesher v. Neyer,* 477 F.3d 784, 797 (6th Cir.2007) (applying Ohio's immunity statute). "It is rarely possible to prove actual malice other than by conduct and surrounding circumstances, and actual malice can be inferred from conduct and surrounding circumstances." *San v. Scherer*, 10th Dist. Franklin No. 97APE03-317, 1998 WL 53934 (Feb. 5, 1998), citing *Villella v. Waikem Motors, Inc.*, 45 Ohio St.3d 36, 543 N.E.2d 464 (1989). The Supreme Court of Ohio has long recognized "that it is rarely possible to prove actual malice otherwise than by conduct and surrounding circumstances. One who has committed an act would scarcely admit that he was malicious about it, and so, necessarily, malice can be inferred from conduct." *Davis v. Tunison*, 168 Ohio St. 471, 475, 155 N.E.2d 904 (1959). A person's subjective state of mind is generally considered a jury issue, because it calls for making inferences after weighing the credibility of a witness's entire testimony and cannot be discerned by focusing on a few lines taken out of context from a deposition or a single answer to a discovery request. In a summary judgment proceeding, the trial court, unlike a jury, may not weigh the evidence or choose among reasonable inferences. *Dupler v. Mansfield*

*Journal Co., Inc.,* 64 Ohio St.2d 116, 413 N.E.2d 1187 (1980). The Supreme Court of Ohio has recognized that the issue of wanton misconduct is normally a jury question. *Fabrey v. McDonald Village Police Dept.,* 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994).

{¶ 21} The requisite state of mind needed to overcome the presumption for governmental immunity can be established by facts that meet a standard for a lesser degree of care than the standard for the intent element of an intentional tort. The presumption for immunity is overcome by evidence that the employee's state of mind was one of three "different and distinct degrees of care [that] are not interchangeable." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶ 31. Both malicious and willful misconduct require proof of an intentional or deliberate purpose to act in a manner that is likely to cause injury, whereas wanton or reckless behavior can be proven by a conscious disregard of, or indifference to, the risk of harm. *Id.* at ¶ 32-33.

{¶ 22} We agree with the trial court that sufficient evidence has been presented on the defamation claim from which a reasonable jury might conclude that Reed acted manifestly outside the scope of his employment, with a malicious purpose, in bad faith, or in a wanton or reckless manner. The record is not devoid of any evidence from which a reasonable jury could find that Reed's purpose was intentionally retaliatory or vengeful with the knowledge or appreciation of the likelihood that his conduct would cause some injury to Coterel's reputation or be adverse to his business, or that Reed acted with a conscious disregard for the risk of harm. Viewing the evidence in the light most favorable to Coterel, and without weighing issues of credibility, the record contains evidence that Reed made several statements to others that were false, that he should have known were false, and that he should have known would cause injury, singly or in combination, to

Coterel's reputation or be adverse to his business, or that Reed acted in conscious disregard for whether his statements would cause harm to Coterel. If a jury were to find, from conflicting evidence, that the statements were not false, were not published, or were not injurious, then the jury will not need to consider the elements of the immunity defense. The record also leaves open a genuine issue of material fact whether Reed was manifestly outside the scope of his employment when he allegedly initiated governmental inspections or investigations, if his actions were not expressly or impliedly authorized by the full Board of Trustees, or not within his statutory duties as a township trustee. Therefore, at this juncture, we cannot eliminate the need for a jury to determine whether the elements of an immunity defense were established by the requisite degree of proof, because we cannot conclude that the record is devoid of any evidence from which a reasonable jury might find that Reed acted with a malicious purpose, in bad faith, in a wanton or reckless manner, or manifestly outside the scope of his employment.

{¶ 23} With respect to the claim for relief alleging tortious interference with a business relationship, Reed argues that Coterel cannot prove the element of the tort that requires proof of a breach or termination of a relationship as a result of Reed's interference. This factual issue goes to the merits of the claim, not to the elements of the statutory immunity defense. To determine whether Reed may be immune from liability for his alleged tortious interference claim, the immunity statute requires the court to determine whether there are genuine issues of fact material to a jury's determination whether Reed acted manifestly outside the scope of his employment, with a malicious purpose, in bad faith, or in a wanton or reckless manner, as specified by R.C. 2744.03(A)(6)(a) and (b), when he allegedly interfered.

{¶ 24} We agree with the trial court that sufficient evidence has been presented on the tortious interference claim from which a reasonable jury might find that Reed acted manifestly outside the scope of his employment, with malicious purpose, in bad faith, or in a wanton or reckless manner. The record is not devoid of any evidence from which a reasonable jury might find that Reed deliberately stopped the contractor from continuing construction, for the purpose of causing injury to Coterel, with the knowledge or intent that his action would likely cause some injury to Coterel.   Viewing the evidence in the light most favorable to Coterel, and without weighing issues of credibility, the record contains evidence from which a reasonable jury might find that Reed acted manifestly outside the scope of his employment when he ordered the contractor to stop work on a project on Coterel's property. Although the township trustees have statutory authority to appoint members to a zoning commission, and to approve zoning plans or amendments recommended by the commission, R.C. 519.04-519.12, an individual trustee is not authorized to act as an enforcement officer to order work stoppage based on a potential zoning violation. The record also contains evidence, when viewed in the light most favorable to Coterel, from which a reasonable jury might find that Reed's state of mind when acting to stop the construction was for the purpose of causing injury to Coterel. Again, these issues, involving genuine issues of material fact for determination by a jury, cannot be decided as a matter of law, but must be presented to a jury to weigh the evidence and reach conclusions based on reasonable inferences. Accordingly, Reed's sole assignment of error is overruled.

## V. Conclusion

**{¶ 25}**  Reed's sole assignment of error having been overruled, the order of the trial court overruling his motion for summary judgment upon the ground of statutory immunity is Affirmed.

. . . . . . . . . . . . .

FROELICH and WELBAUM, JJ., concur.

Copies mailed to:

Michael P. McNamee
Gregory B. O'Connor
Lawrence E. Bariere
Scott A. Sollmann
Andrew T. Vollmar
Hon. Stephen Wolaver