[Cite as *Kubala v. Smith*, 2023-Ohio-991.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| KENNETH J. KUBALA, | CASE NO. 2022-T-0094 |
| Plaintiff-Appellee, | |
| - vs - | Civil Appeal from the Court of Common Pleas |
| RANDY SMITH, et al., | |
| Defendant-Appellant. | Trial Court No. 2021 CV 00651 |

## O P I N I O N

Decided: March 27, 2023
Judgment: Affirmed

*David L. Engler*, Engler Law Firm, 181 Elm Road, N.E., Warren, OH 44483 (For Plaintiff-Appellee).

*Jeffrey Stankunas* and *Molly R. Gwin*, Isaac Wiles & Burkholder, LLC, Two Miranova Place, Suite 700, Columbus, OH 43215 (For Defendant-Appellant).

EUGENE A. LUCCI, J.

{¶1} Appellant, Randy Smith, appeals the trial court's denial of summary judgment on the issue of his immunity in his individual capacity. We affirm.

{¶2} From October 2011 until May 2018, appellee, Kenneth J. Kubala, worked as a safety manager for the Trumbull County Engineer's Office, where Smith served as the Trumbull County Engineer. Kubala resigned effective May 11, 2018.

{¶3} In 2021, Kubala filed a complaint pursuant to R.C. 4112.01 et seq. against Smith and Trumbull County alleging that Smith created a sexually hostile work

environment.[1]  Kubala specifically maintained that Smith "willfully, wantonly, maliciously, and in reckless disregard for Kubala's rights" engaged in sexually hostile conduct.  The county and Smith answered the complaint, denying that Smith created a sexually hostile work environment.  As an affirmative defense, the county and Smith asserted that they were entitled to immunity under R.C. Chapter 2744.

{¶4}  Thereafter, the county and Smith moved for summary judgment, claiming that they were entitled to judgment because (1) Kubala could not demonstrate that the alleged harassment was based on sex; (2) Kubala could not demonstrate that the alleged conduct was severe or pervasive; and (3) Smith in his individual capacity was immune from Kubala's claim pursuant to R.C. 2744.03(A)(6)(b).[2]  Kubala responded in opposition to the motion, and the county and Smith filed a reply.

{¶5}  Thereafter, the trial court issued an entry denying summary judgment on the first and second bases set forth above, granting summary judgment to the county and Smith in his official capacity, and denying summary judgment to Smith in his individual

1. Kubala originally filed a complaint in 2018, alleging that Smith created a sexually hostile work environment and violated Kubala's First Amendment rights to freedom of speech and association.  *Kubala v. Smith*, N.D.Ohio No. 4:18CV1988, 2019 WL 7282096, *1-2 (Dec. 27, 2019), *aff'd in part, vacated in part*, 984 F.3d 1132.  The case was removed to federal court.  *Id.* at *2.  The federal district court granted summary judgment to the county and Smith, and Kubala appealed.  *Id.* at *9; *Kubala v. Smith,* 984 F.3d 1132, 1135 (6th Cir.2021) ("*Kubala II*").  On appeal, the Sixth Circuit affirmed summary judgment with respect to Kubala's First Amendment claim but determined that the sexual harassment claim shared no common nucleus of fact with the First Amendment claim, depriving the district court of subject matter jurisdiction over the sexual harassment claim.  *Kubala II* at 1135.  The Sixth District therefore vacated the district court's judgment on the sexual harassment claim and directed the district court to dismiss that claim without prejudice.  *Id.* at 1142.

2. Any potential issues regarding the propriety, finality, and appealability of the trial court's grant of summary judgment on the issue of immunity to the county and Smith, in his official capacity, are beyond the scope of this appeal.  *See Zoldan v. Lordstown*, 11th Dist. Trumbull No. 2014-T-0002, 2014-Ohio-3007, ¶ 10 (cross-appeal of the grant of summary judgment to village on its claim of immunity not final order where claims against individual named in the complaint were pending, and the judgment entry ruling on summary judgment did not contain Civ.R. 54(B) language).

Case No. 2022-T-0094

capacity. The trial court determined that questions of fact existed as to whether immunity pursuant to R.C. 2744.03(A)(6) was available to Smith.

{¶6} In his two assigned errors, Smith contends:

[1.] The trial Court erred as a matter of law by denying Defendant-Appellant Randy Smith immunity in his individual capacity under R.C. § 2744.03(A)(6) by determining that a genuine issue of material fact existed as to whether he was acting manifestly outside the scope of his employment.

[2.] The Trial Court erred as a matter of law by denying Defendant-Appellant Randy Smith immunity in his individual capacity under R.C. § 2744.03(A)(6) by determining that a genuine issue of material fact existed as to whether he was acting with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶7} In Smith's assigned errors, he argues that the trial court erred in denying him summary judgment on the issue of immunity in his individual capacity.

{¶8} Initially, we note that "[g]enerally, the denial of summary judgment is not a final, appealable order." *Ruckman v. Smith*, 2022-Ohio-1813, 190 N.E.3d 707, ¶ 9 (11th Dist.), citing *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 9. "However, the Supreme Court of Ohio has held that '[w]hen a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C).'" *Ruckman* at ¶ 9, quoting *Hubbell* at syllabus. "Appellate review under R.C. 2744.02(C) is limited to the review of alleged errors that involve the denial of the benefit of an alleged immunity from liability." *Ruckman* at ¶ 9, citing *Doe 1 v. Licate*, 11th Dist. Ashtabula Nos. 2018-A-0019, 2018-A-0020, 2019-Ohio-412, ¶ 28.

3

{¶9} We review decisions denying summary judgment on the issue of immunity de novo, "i.e., independently and without deference to the trial court's decision." *Hedrick v. Szep*, 11th Dist. Geauga No. 2020-G-0272, 2021-Ohio-1851, ¶ 13, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *Ruckman* at ¶ 10.

> Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977); *Allen v. 5125 Peno, LLC*, 2017-Ohio-8941, 101 N.E.3d 484, ¶ 6 (11th Dist.), citing *Holliman v. Allstate Ins. Co.*, 86 Ohio St.3d 414, 415, 715 N.E.2d 532 (1999). "The initial burden is on the moving party to set forth specific facts demonstrating that no issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Allen* at ¶ 6, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). "If the movant meets this burden, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists for trial." *Allen* at ¶ 6, citing *Dresher* at 293. "[T]he purpose of summary judgment is 'not to try issues of fact, but rather to determine whether triable issues of fact exist.'" *Smathers v. Glass*, --- Ohio St.3d ----, 2022-Ohio-4595, --- N.E.3d ----, ¶ 3 (Dec. 22, 2022), quoting *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 15, 467 N.E.2d 1378 (6th Dist.1983). Therefore, a court making an immunity determination at the summary judgment stage of proceedings "must look at the evidence and determine whether it is so one-sided that the party claiming immunity should prevail as a matter of

4

law." *Smathers* at ¶ 3, citing *Turner v. Turner*, 67 Ohio St.3d 337, 340, 617 N.E.2d 1123 (1993).

{¶10} With respect to Smith's claim of immunity, Smith holds the office of the Trumbull County Engineer. "[O]fficeholders are employees of political subdivisions" when sued in their individual, as opposed to their official, capacities. *Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, 927 N.E.2d 585, ¶ 21, quoting R.C. 2744.01(B) ("the term 'employee' 'includes any elected or appointed official of a political subdivision'"); *Kravetz v. Streetsboro Bd. of Edn.*, 11th Dist. Portage No. 2011-P-0025, 2012-Ohio-1455, ¶ 22.[3] Because the trial court denied summary judgment to Smith on the issue of immunity in his individual capacity, the issues on appeal pertain to political-subdivision-employee immunity. Pursuant to R.C. 2744.03(A)(6), in a civil action, an employee of a political subdivision is immune from liability unless one of the following applies:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
>
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

---

3. Where "allegations are directed against the holder of an office in his *official capacity*, it is the equivalent of suing the political subdivision itself[,]" and immunity is reviewed through the three-tier analysis applicable to political subdivision immunity under R.C. 2744.02. (Emphasis added.) *Thompson v. Buckeye Joint Vocational Sch. Dist.*, 2016-Ohio-2804, 55 N.E.3d 1, ¶ 39 (5th Dist.), citing *Lambert.*

Case No. 2022-T-0094

**{¶11}** Here, the court denied summary judgment on the issue of Smith's immunity in his individual capacity, finding that genuine questions of fact remained relative to the first two of these exemptions to immunity. With respect to the first exemption, "R.C. Chapter 2744 does not define what conduct is 'manifestly outside the scope of the employee's employment or official responsibilities.'" *Thomas v. Bauschlinger*, 9th Dist. Summit No. 27240, 2015-Ohio-281, ¶ 25, quoting R.C. 2744.03(A)(6)(a). "However, Ohio courts have generally held that '"conduct is within the scope of employment if it is initiated, in part, to further or promote the master's business."'" *Thomas* at ¶ 25, quoting *Curry v. Blanchester*, 12th Dist. Clinton Nos. CA2009-08-010, CA2009-08-012, 2010-Ohio-3368, ¶ 30, quoting *Jackson v. McDonald*, 144 Ohio App.3d 301, 307, 760 N.E.2d 24 (5th Dist.2001). "'For an act to fall within the scope of employment, it must be "calculated to facilitate or promote the business for which the [employee or agent] was employed."'" *Thomas* at ¶ 25, quoting *Johnson v. Godsey*, 2d Dist. Clark No. 2012 CA 80, 2013-Ohio-3277, ¶ 32, quoting *Osborne v. Lyles*, 63 Ohio St.3d 326, 329, 587 N.E.2d 825 (1992). "'In general, if an act is committed within the scope of employment, it will be authorized, either expressly or impliedly, by the employer.'" *Thomas* at ¶ 25, quoting *Johnson* at ¶ 32. "'"It is only where the acts of [public] employees are motivated by actual malice or other [situations] giving rise to punitive damages that their conduct may be outside the scope of their * * * employment."'" *Thomas* at ¶ 25, quoting *Curry* at ¶ 30, quoting *Jackson* at 307. "'The act must be so divergent that it severs the employer-employee relationship.'" *Thomas* at ¶ 25, quoting *Wee Care Child Ctr., Inc. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 13AP-1004, 2014-Ohio-2913, ¶ 28.

6

Case No. 2022-T-0094

{¶12} In the similar context of immunity for state employees, R.C. 9.86 provides exemptions from immunity akin to those contained in R.C. 2744.03(A)(6)(a) and (b), which are applicable to political-subdivision employees. *See* R.C. 9.86 ("* * * no officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were *manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.*" (Emphasis added.)). With respect to R.C. 9.86, in addressing whether an employee acted manifestly outside the scope of his employment, the Tenth District has indicated that "'an employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business.'" *Oye v. Ohio State Univ.*, 10th Dist. Franklin No. 02AP-1362, 2003-Ohio-5944, ¶ 7, quoting *Byrd v. Faber*, 57 Ohio St.3d 56, 59, 565 N.E.2d 584 (1991). "Implicit in this statement is that such self-serving acts are not within an employee's scope of employment." *Oye* at ¶ 7. "Given this framework of analysis, [the Tenth District] [has] interpret[ed] actions 'manifestly outside the scope of his employment or official responsibilities,' as used in R.C. 9.86, to include actions that bear no relationship to the conduct of the state's business." *Oye* at ¶ 7, citing *Hidey v. Ohio State Hwy. Patrol*, 10th Dist. Franklin No. 97API12-1587, 1998 WL 655277, *1 (Sept. 22, 1998). We likewise conclude that a political-subdivision employee acts "manifestly outside the scope of his employment or official responsibilities" when his actions bear no relationship to the conduct of the political subdivision's business for purposes of the first exemption to immunity contained in R.C. 2744.03(A)(6)(a).

7

{¶13} With respect to the second exemption to immunity contained in R.C. 2744.03(A)(6)(b), regarding acts committed with "malicious purpose, in bad faith, or in a wanton or reckless manner," these terms describe the following distinct types of conduct.

{¶14} ""Malicious" means "indulging or exercising malice; harboring ill will or enmity."" *Cook v. Hubbard Exempted Village Bd. of Edn.*, 116 Ohio App.3d 564, 569, 688 N.E.2d 1058 (11th Dist.1996), quoting *Jackson v. Butler Cty. Bd. of Cty. Commrs.*, 76 Ohio App.3d 448, 453, 602 N.E.2d 363 (12th Dist.1991), *abrogated on other grounds as stated in Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266. "Furthermore, 'malice' can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Cook* at 1061, quoting *Jackson* at 453-454.

{¶15} ""[B]ad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another."" *Cook* at 1061-1062, quoting *Jackson* at 453-454, quoting *Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148, 187 N.E.2d 45 (1962), paragraph two of syllabus.

{¶16} "Wanton misconduct is 'the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result.'" *Smathers*, 2022-Ohio-4595, at ¶ 33, quoting *Anderson* at ¶ 33.

{¶17} "Reckless conduct" connotes the "'conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct.'" *Smathers* at ¶ 33, quoting *Anderson*

8

at ¶ 34, and citing *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 73 (referring to recklessness as a "perverse disregard of a known risk").

{¶18} Here, Kubala alleged in his complaint that Smith engaged in sexually hostile acts toward Kubala "that occurred continuously from in or about 2015 through May 11, 2018[,]" which included, but were not limited to:

> a. Smith asked Kubala whether Kubala was a homosexual;
>
> b. On multiple occasions, Smith asked Kubala to remove his shirt in his office in the presence of others including Herb Leukart, who was present for the majority of Smith's sexually hostile comments and interactions with Kubala;
>
> c. Smith encouraged Kubala to come and visit Smith's renter, "Richard," who Smith told Kubala was waiting for Kubala while lying on a bear skin rug;
>
> d. Smith, in a "creepy" way, without letting Kubala know if Smith was or was not joking or being serious, told Kubala that Smith's wife, Angela, was away at a union conference, and asked Kubala to come over to keep him from being "scared;"
>
> e. Smith asked if Kubala had ever seen a male elected Trumbull official nude;
>
> f. Smith, at a meeting, encouraged Kubala to place his "wiener" in the ear of another high-ranking employee of the Office of the Trumbull County Engineer who appeared to be sleeping;
>
> g. Smith, on hundreds of occasions throughout the period that began in or about 2015 and extended until May 11, 2018 would lick the top of his Diet Pepsi can in a sexually suggestive way while looking directly at Kubala;
>
> h. Smith suggested that Kubala ride in a truck with the road superintendent while Kubala was holding the road superintendent's "wiener;"
>
> i. Smith asked to see Kubala's hands and said "You have nice, soft hands." Smith made the same request three months later, and when Kubala refused, Smith grabbed Kubala's

9

hands. Smith's comments about Kubala's hands had a distinct sexual connotation;

j. While at lunch at the Buena Vista Café with Kubala, the hostess asked Smith and Kubala how they were doing and Smith replied "We're trying to find Kubala a boyfriend or girlfriend; anyone will do.";

k. On multiple occasions at other dining establishments with Kubala present, Smith made gratuitous comments to restaurant employees which comments demonstrated Smith's presumption regarding Kubala's sexual orientation and Kubala's sexual preference; and

l. On one occasion, Smith saw Kubala sitting outside the Starbucks at the Eastwood Mall with a female friend and said "Good to see you with a girl."

{¶19} In his deposition, Kubala testified as to the above incidents, and he maintained that, although the complaint alleged that Smith suggestively licked a soda can in front of Kubala "on hundreds of occasions," this conduct had occurred about 10-20 times. Kubala further testified as to other of Smith's actions/comments including: Smith referring to Kubala as a "delicate flower" at restaurants approximately 6-8 times; Smith telling Kubala that having boyfriends does not make someone homosexual; Smith describing certain individuals involved in previous litigation as people who "want to pull your pants down, stick it in your ass, and break it off" and "cut your balls off[,]"; Smith stating to another employee of the Engineer's Office that he had "caught" Kubala, which Kubala interpreted as a claim to have caught Kubala masturbating; Smith asking Kubala if he was homosexual; Smith commenting to Kubala that they should go to the drive-in to drink wine and eat a food basket that they had won at a raffle. Kubala maintained several times that he told Smith that he did not "want to hear" these comments.

Case No. 2022-T-0094

{¶20} In the motion for summary judgment, Smith maintained that, in his individual capacity, he was immune from Kubala's claims under R.C. 2744.03(A)(6)(b). In support, Smith contended that Kubala had no evidence that Smith's comments/conduct were made with malicious purpose, in bad faith, or in a wanton or reckless manner. Smith relied on Kubala's deposition testimony wherein he admitted to never complaining about Smith's actions and never requested Smith to stop making the alleged remarks, but instead only stated, "I don't like to hear that kind of stuff." Smith did not address R.C. 2744.03(A)(6)(a), exempting from immunity an "employee's acts or omissions [that] were manifestly outside the scope of the employee's employment or official responsibilities[.]"

{¶21} Kubala responded to the motion for summary judgment with regard to immunity by first addressing the exemption from immunity pursuant to R.C. 2744.03(A)(6)(a), which he referenced that Smith had failed to address. Kubala maintained that a reasonable juror could conclude that Smith's actions were manifestly outside the scope of employment because Smith's actions did not further or promote the interest of the county. With regard to the immunity exemptions under R.C. 2744.03(A)(6)(b), Kubala maintained that material questions of fact existed as to whether: (1) Smith's comments where willful, in that they deviated from the clear legal duty that prohibits sexually harassing employees or engaging in conduct that creates a sexually hostile work environment and knew, or should have known, that his conduct would injure Kubala; (2) Smith acted in bad faith, in that he engaged in the conscious wrongdoing of making sexually-related comments to Kubala in violation of Ohio's anti-discrimination laws; and (3) Smith acted with malice by continuing this conduct despite Kubala's repeated requests that he stop.

11

Case No. 2022-T-0094

**{¶22}** Kubala further maintained that the county's and Smith's motion for summary judgment did not present the evidence in the light most favorable to Kubala. Nonetheless, Kubala argued that even if the record were read as supporting Smith's assertions that Kubala failed to request Smith to stop his behavior and failed to lodge a formal complaint against Smith, such actions were irrelevant in the context of the immunity exceptions contained in R.C. 2744.03(A)(6)(a) and (b).

**{¶23}** In their reply, the county and Smith maintained that Kubala did not allege in his complaint that Smith acted manifestly outside the scope of employment so as to be exempt from immunity under R.C. 2744.03(A)(6)(a).[4] However, the county and Smith argued that, if Smith's conduct was manifestly outside the scope of his employment, then the claim of a hostile work environment against Smith in his individual capacity and the county under R.C. 4112.02 necessarily fails.

**{¶24}** As set forth above, the trial court determined that questions of fact existed as to whether Smith acted manifestly outside the scope of employment and whether he acted with malicious purpose, in bad faith, or in a wanton or reckless manner. Accordingly, the court denied summary judgment to Smith in his individual capacity.

**{¶25}** On appeal, Smith initially maintains that the trial court mischaracterized the standard applicable to R.C. 2744.03(A)(6)(a), necessitating reversal, by stating in its decision that "[w]hether the Defendant, Randy Smith, was acting *within the scope of his employment* is a question of fact to be decided by a jury." (Emphasis added.) However,

---

4. The county and Smith did not advance an argument in the trial court, nor does Smith advance an argument on appeal, that the issue of whether Smith was exempted from immunity under R.C. 2744.03(A)(6)(a) was not before the court for failure of the complaint to specifically allege that Smith acted manifestly outside the scope of his employment. Our opinion should not be read to express any position on this issue.

12

the trial court's statement is an accurate statement of the law in general as applied here. *See Townsend v. Kettering*, 2022-Ohio-2710, 194 N.E.3d 457, ¶ 23 (2d Dist.) ("Whether an employee acted within the scope of employment generally is a question of fact to be decided by the jury." (Citation omitted.)). Further, the court reasoned that "[i]t is difficult to imagine how the conduct alleged by the Plaintiff could further or promote any interest of the Engineer or of Trumbull County." *See Thomas*, 2015-Ohio-281, at ¶ 25. These are appropriate considerations in determining whether triable questions exist on the issue of an employee acting manifestly outside the scope of employment for purposes of R.C. 2744.03(A)(6)(a). Accordingly, we do not read the trial court's decision as misunderstanding the applicable standards.

{¶26} Smith next argues that his alleged actions do not rise to the level of acting "manifestly outside the scope" of his employment or official duties. In support, Smith maintains that only two of Kubala's allegations were purportedly made outside of the workday, and "[t]he remaining allegations, however crude, are specifically related to workplace discussion at the Engineer's Office."

{¶27} Implicit in Smith's argument on appeal is an apparent concession that certain specific instances of alleged conduct were not made as part of workplace discussion. Regardless, although the place and time of the conduct may be relevant in determining whether the conduct was manifestly outside the scope of employment, such factors are not themselves determinative of whether the conduct promoted any interest of the employer. *See Thomas*, 2015-Ohio-281, at ¶ 25 (conduct is manifestly outside scope of employment if it is "so divergent that it severs the employer-employee relationship"); *see also Oye*, 2003-Ohio-5944, at ¶ 7 (actions that bear no relationship to

13

Case No. 2022-T-0094

the conduct of the employer's business are manifestly outside the scope of employment). Unlike the allegations involved in cases cited by Smith, here there is no indication in the record that Smith's comments and conduct pertained to county business. *See Curry v. Blanchester*, 12th Dist. Clinton Nos. CA2009-08-010, CA2009-08-012, 2010-Ohio-3368, ¶ 31 (where mayor made a derogatory and crude comment regarding employee's appearance and dress during discussion of employee's pay raise, "it was not 'manifestly' outside the scope of [mayor's] employment."), *Afjeh v. Ottawa Hills*, 6th Dist. Lucas No. L-14-1267, 2015-Ohio-3483, ¶ 5, 14 (village solicitor acted within scope of her employment when, while attempting to clear building following completion of a village meeting, she moved a resident in her wheelchair out of the only doorway to the meeting room after resident refused to move); *Cline v. Tecumseh Local Bd. of Edn.*, 2d Dist. Clark No. 2020-CA-36, 2021-Ohio-1329, ¶ 2, 16 (where mother arranged for early release of children from school into her care, but children were mistakenly released from school to board bus, bus driver who returned children to school and then engaged in verbal altercation with mother was acting within the scope of employment).

{¶28} Based on the foregoing, a material question of fact remains as to whether Smith was acting manifestly outside the scope of his employment or official responsibilities when engaging in the conduct and making the comments alleged by Kubala. Accordingly, the trial court did not err in denying Smith's motion for summary judgment on the basis.

{¶29} Smith next argues that his alleged conduct and comments amount to "simple teasing" and "offhand comments" occurring in isolated incidents over approximately three years, which did not rise to the level of recklessness. Smith further

14

Case No. 2022-T-0094

argues that if a question exists as to whether he created a "risk of harm," there is "at a minimum, a close enough question that the knowledge of risk cannot safely be imputed to Smith without some accompanying evidentiary basis."

{¶30} However, "[i]n a summary judgment review, the court may not weigh the proof or choose among reasonable inferences[.]" *Coterel v. Reed*, 2016-Ohio-7411, 72 N.E.3d 1159, ¶ 15 (2d Dist.). Further, our review does not pertain to whether there is factual support for the underlying claim, as the "appeal is limited in scope to a determination whether there are genuine issues of fact material to the defense for statutory immunity." *Id.* "'Consequently, in order to sustain a motion for summary judgment predicated upon immunity bestowed by R.C. 2744.03(A)(6)(b), a court must conclude that the record is devoid of evidence tending to show that the political subdivision employee acted wantonly or recklessly.'" *Coterel* at ¶ 15, quoting *Irving v. Austin*, 138 Ohio App.3d 552, 556, 741 N.E.2d 931 (6th Dist.2000).

{¶31} Here, there exists summary judgment evidence from which it may be reasonably inferred that Smith acted maliciously, in bad faith, or in a wanton or reckless manner. Kubala maintained that Smith directed numerous comments and engaged in behavior toward Kubala that was either inferentially or explicitly sexual in nature. Kubala further maintained that he informed Smith that he did not want to hear these comments. The record is not devoid of evidence, when viewed in the light most favorable to Kubala, that Smith's conduct and comments were made to intentionally cause harm, or, at minimum, with "conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct."

15

Case No. 2022-T-0094

{¶32} Accordingly, the trial court did not err in denying summary judgment on the issue of employee immunity on this basis.

{¶33} The judgment is affirmed.


JOHN J. EKLUND, P.J.,

MATT LYNCH, J.,

concur.